IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN TRAVIS MOLLIVER, : | |
| Plaintiff : | |
| v. : | Case No. 3:22-cv-146-KAP |
| ABBIE TATE, WARDEN, BLAIR : | |
| COUNTY PRISON, *et al.*, : | |
| Defendants : | |

<u>Memorandum Order</u>

The discovery dispute about kiosk records, which is completely irrelevant to the summary judgment motion, appears to have finally been resolved by the production of some records not initially looked for. As a result, ECF no. 39 is denied as moot.

Defendant Stitt's motion for summary judgment at ECF no. 42 is granted in part and denied in part as discussed below.

Plaintiff Molliver is an inmate at S.C.I. Pine Grove, serving a 24-48 month aggregate sentence imposed in Blair County on February 7, 2022, after an October 2021 jury trial in <u>Commonwealth v. Molliver</u>, CP-07-CR-483-2021 (C.P. Blair). While proceedings in that matter were pending, Molliver was detained at the Blair County Prison, although according to Molliver the direct cause of his detention between January 14, 2022 and February 1, 2022 was his failure to make bail on another matter before Magisterial District Judge Aigner. On January 29, 2022, there was an altercation between Molliver and two corrections officers at the Blair County Prison which led to charges of aggravated assault and terroristic threats against Molliver at <u>Commonwealth v. Molliver</u>, CP-07-CR-327-2022 (C.P. Blair). That prosecution may still be pending: according to the public docket sheet Molliver's interlocutory appeal at 1005 WDA 2022 to the Pennsylvania Superior Court was quashed on March 1, 2023, but there has been no further activity and the public docket sheet is marked "closed."

Molliver filed a Complaint in September 2022, ECF no. 5, supplemented, ECF no. 9, amended, ECF no. 12. It claimed that defendants Abbie Tate, the warden of the Prison, and Zachary Stitt, Nate Port, and Joshua Coudriet, three corrections officers there, violated Molliver's rights. After a motion to dismiss the complaint for failure to state a claim, *see* Fed.R.Civ.P. 12(b)(6), was disposed of there remained one defendant, corrections officer Stitt, and one claim, that Stitt used excessive force in response to the altercation on January 29, 2022. Defendant Stitt has filed a motion for summary

1

judgment, *see* Fed.R.Civ.P. 56, at ECF no. 42, to which plaintiff has replied at ECF no. 46.

The strongest reason for the grant of summary judgment in favor of Stitt is the utter inadequacy of Molliver's response, which is a stitchery of seemingly random quotes from cases and secondary materials. It is settled law, and there is no special exception for *pro se* litigants, *see* Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that *pro se* litigants "must abide by the same rules that apply to all other litigants"), that an issue is waived unless a party raises it in its opening brief and that a passing reference to an issue does not suffice to bring that issue before the court. *See e.g.* Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp., 26 F.3d 375, 398 (3d Cir. 1994); Brown v. Wayne County, No. 22-1506, 2023 WL 3376547, at *1 (3d Cir. May 11, 2023), *cert. dismissed sub nom.* Brown v Pennsylvania, No. 23-5092, 2023 WL 6379041 (U.S. Oct. 2, 2023).

That principle only comes into play in summary judgment, however, when the moving party's motion adequately puts a point of law or fact at issue. A party moving for summary judgment bears the initial burden of pointing the district court to the basis in the record for its argument that there is no genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). If the moving party does so, Fed.R.Civ.P. 56 then obliges the party opposing summary judgment to show by competent evidence that there is a genuine factual dispute, that is, that sufficient evidence exists so that a reasonable jury applying the relevant law could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986). Where there is a factual dispute, all reasonable inferences must be drawn in favor of the nonmoving party, in this case the plaintiff. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Stitt's motion rests on two points: there was no excessive use of force, and if it is even a close call Stitt is protected by qualified immunity. Under Kingsley v. Hendrickson, 576 U.S. 389, 402 (2015), factors that bear on the reasonableness or unreasonableness of force used by corrections personnel against a pretrial detainee include the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. Kingsley v. Hendrickson, *supra*, 576 U.S. at 397. This is well-settled law. *See* Smith v. Mensinger, 293 F.3d 641, 648-49 (3d Cir.2002), *quoting* Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir.2000)(balancing the need for use of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the threat to staff and other inmates perceived by the corrections officers, and any efforts made to temper the severity of the force used.)

Molliver's best case is made by accepting the allegations of the Complaint as his

sworn testimony. Molliver would claim that on January 29, 2022 he was an inmate at the Blair County Prison awaiting sentencing on CP-07-CR-483-2021, and also detained as a result of new charges that were later dropped. He had developed flu like symptoms he thinks might have been Covid and had a rash that personnel in the medical department assessed as shingles. On the morning of January 29, 2022, a corrections officer named Gabert told Molliver to pack up his possessions for a move from E-block to A-block for quarantine in a single cell. Molliver was arguing with Gabert in what he describes as "an argumental tone" that the move made no sense when, according to Molliver, a corrections officer named Dostal intervened and took Molliver by the arm. Molliver pulled out of Dostal's grasp. Dostal and Gabert then announced an "all-call," the meaning of which is self-explanatory, and one of them had taken Molliver to the floor by the time Stitt and other officers arrived. According to Molliver, Stitt then "with boot on back of my neck kept pushing my face to the floor" while and after officers handcuffed Molliver. Molliver was then taken to a shower. (Molliver does not explain why this step took place but the prison's records discussed below explain that Molliver needed to wash off after urinating on his prison garb in the course of being handcuffed.) While in the shower, Molliver says, Stitt grabbed him by the throat using his left hand and (presumably using his right hand) punched Molliver in the face, giving Molliver a blackened left eye and bruises on his face, all the while screaming that if Molliver ever touched a guard again "I (Stitt) will kill you (Molliver)."

     The defendant submitted in support of summary judgment a flash drive containing two short video clips (no audio) of events at about 11:20a.m. on January 29, 2022. The clips show the same scene from opposite ends of the unit. All the relevant action takes place in the first few seconds: a door to the unit (a corridor with cells on either side of a central aisle) opens and an officer with mussed hair follows a jumpsuited inmate into view, who shakes off an attempt to grasp him. A second officer in the picture hovers nearby as the first officer collars the inmate and takes him to the ground, out of view; the second officer appears to be grabbing to reach the inmate's hand. Other jumpsuited inmates farther up the unit look on and move away from the altercation, as another corrections officer enters at a walk from the far end of the unit then breaks into a run toward the altercation. More officers arrive, and the other inmates go into the cells and the cell doors are closed. The inmate involved in the altercation is unquestionably Molliver; the two corrections officers with contact with Molliver onscreen are presumably Gabert and Dostal. Stitt also submits Molliver's medical records and the Prison's records of its (apparently routine) investigation of the unplanned use of force.

     The complaint was adequate to state a claim against defendant Stitt for excessive use of force, but at the summary judgment stage the two episodes in which Stitt is alleged to have used excessive force need to be considered separately. No reasonable jury could return a verdict that there was excessive use of force by Stitt in the initial contact. Even

though the interaction is not captured on camera, there is nothing in Molliver's complaint (which in light of his anemic response to the motion is the only evidence in support of the claim) that indicates that it was an excessive use of force for Stitt to put his foot (whether barefoot or shod) on Molliver's neck while other corrections officers attempted to handcuff Molliver. There was by Molliver's own account a need for a use of force even if a jury accepted Molliver's version of events as Molliver merely pulling away from the officers who were trying to get him to stop being argumentative and comply with the order to move. That need for the use of force did not end simply because Molliver was taken to the ground. Stitt's limited use of force in allegedly using a booted foot to "keep pushing" Molliver's face down (which implies ongoing resistance by Molliver) while Molliver was being handcuffed or shortly after he was being handcuffed (the precise timeline is not clear in anyone's account) did not cause Molliver any injury other than what at the most is claimed to have been temporary pain. Although use of force and not injury is the focus of the legal claim, there is an obvious connection between the two elements such that a lack of injury can be and here is dispositive of any claim that excessive force was used.

Molliver claims that the absence of record of any nontrivial injury is because medical personnel refused him treatment, but the medical records are to the contrary: Molliver was seen after the incident and was prescribed an oral analgesic for the next three days. Molliver took one 50mg tablet of Tramadol on the morning and evening of January 30, 2023, and one more on the morning of January 31, 2022. Molliver refused any pain medication on the afternoon and evening of January 29, 2022. Molliver submits no evidence or records that indicate he ever claimed any further injury or sought further treatment.

According to the record of the internal investigation of the incident by the Prison, including reports by Stitt, Gabert, and Dostal, medical personnel "cleared" Molliver to be moved after he was in handcuffs and advised the officers on scene that they should not touch Molliver without gloves on due to the potentially contagious nature of his rash. Stitt and other officers then put on gloves. The shift commander was on scene and ordered Gabert and Dostal away from further involvement at the scene. Molliver was then moved the shower and then to a cell. Medical personnel recorded that at 11:34 a.m. "no injuries noted." Subsequent records reflect examination on February 2, 2022 that indicated Molliver was calm, oriented to time and place, and looked "age appropriate and "well-groomed." An examination on February 7, 2022 apparently associated with Molliver being placed in disciplinary custody expressly reported that Molliver had "no" injuries. There is no need to discuss qualified immunity because it is not even a close call: pretrial detainees cannot use physical force to resist lawful orders and then sue to have a jury second-guess a use of force in response so limited it caused only transient pain.

Where audiovisual records exist they are well-nigh incontrovertible. *See* Scott v.

Harris, 550 U.S. 372, 380–81 (2007). The problem here is that critical parts of the first episode with Molliver are off-screen, and the second alleged interaction between Stitt and Molliver is not captured on camera at all. For the reasons above, Stitt did not use excessive force as a matter of law in the initial episode. As to the second interaction, however, the lack of record makes this a jury matter. If Stitt punched Molliver in the face in the shower to punctuate an admonition about not touching corrections officers, that would be a gratuitous and therefore excessive use of force against a pretrial detainee because it would have been objectively unreasonable despite the minimal nature of the plaintiff's injury (basically a black eye that would have resolved at the latest by February 7, 2022). The same nonexhaustive list of factors that bear on Stitt's first alleged use of force are relevant here. The "no injury" evaluation of January 29, 2022 is not elaborated by any further explanation and could be found not to contradict Molliver's account of a punch causing a black eye because the evaluation could have been done after the first but before the second Stitt/Molliver interaction. The uncontradicted medical report of February 2, 2022, and the lack of any evidence that Molliver told anyone about the alleged punch when he met with his defense counsel and appeared before Judge Doyle only days after January 29, 2022 point up additional weaknesses in Molliver's case, but a jury could find liability as to the alleged second interaction with minimal injury because it could find there was no need for the use of force at all. Corrections officers cannot simply punch pretrial detainees to make a point, and if a jury were to find that is what happened the principle is so clear that qualified immunity would not protect Stitt.

There is no point to scheduling a trial with Molliver in custody and pending trial on criminal charges related to this lawsuit. The parties are invited to let me know: 1) what is the status of CP-07-CR-327-2022; and 2) when is plaintiff likely to be paroled on CP-07-CR-483-2021. The Court also has a *pro bono* panel of attorneys who may accept appointment to represent plaintiff for the limited purpose of discussing settlement on the one remaining claim. If after conferring both sides are interested in discussing settlement they should tell me so in writing. Otherwise both sides should file pretrial statements on or before November 10, 2023.

DATE: October 10, 2023

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel and by U.S. Mail to:

John T Molliver QN-7837
S.C.I. Pine Grove
189 Fyock Road
Indiana, PA 15701